**Diane HOWARD, Administrator of the Estate of Tony L. Howard, Plaintiff,**

**v.**

**INDIANA MICHIGAN POWER COMPANY and American Electric Power, Defendants.**

**No. EV 91–72–C.**

United States District Court, S.D. Indiana, Evansville Division.

April 24, 1992.

Norman E. Hay, Gleason Hay & Gleason, Cannelton, IN, David M. Taylor, Hayden & Taylor, Owensboro, KY, for Diane Howard, Administrator.

Charles E. Bruess, Barnes & Thornburg, Indianapolis, IN, for Indiana Michigan Power Co. and American Elec. Power.

## MEMORANDUM

BROOKS, Chief Judge.

This matter comes before the Court on Defendants' Motion for Summary Judgment on all counts and Defendants' Motion to Strike certain paragraphs of the Plaintiff's Affidavit in Response to Motion for Summary Judgment. On 26 April 1991, Plaintiff filed her complaint in Spencer Circuit Court and it was subsequently removed to this Court by the Defendants. Facts relevant to the analysis are presented below.

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e). Plaintiffs complaint in Count II alleges breach of contract in failing to maintain an employee benefits package. Such a claim is preempted by ERISA even where ERISA is not plead in the complaint. *Metropolitan Life Ins. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Since this Court has jurisdiction over Count II, it maintains supplemental jurisdiction over the other counts, and it is unnecessary to ascertain at this point whether it has independent grounds to assert jurisdiction over the other counts of the complaint.

## SUMMARY JUDGMENT: COUNTS II, III, and IV

In answer to Defendants' Motion for Summary Judgment on Counts II, III, and IV, Plaintiff "stipulate[s] that summary judgment should be entered on Count II, III, and IV of her Complaint." Answer

Brief at 2. Therefore, Defendants' Motion for Summary Judgment is Granted as to Counts II, III, and IV.

## SUMMARY JUDGMENT: COUNT I

### A

■ Defendants argue Plaintiff's wrongful discharge claim, Count I, is preempted by ERISA. Count I of Plaintiff's complaint alleges that "Defendants ... intentionally acted in an oppressive manner in defiance of the legislative intent of Workmen's Compensation Law by discharging plaintiff's decedent." Complaint at 3. ERISA preempts a wrongful discharge claim when "the existence of a pension plan is a critical factor in establishing liability under the State's wrongful discharge law." *Ingersoll–Rand v. McClendon*, 498 U.S. 133, 136, 111 S.Ct. 478, 480, 112 L.Ed.2d 474, 484 (1990). Though Count I includes the loss of benefits from an employment benefit plan as the sole damages resulting from this wrongful discharge, ERISA is not implicated by Count I. The determination of liability does not require an examination of the employee benefit plan; liability is premised solely on Indiana common law.

In *Ingersoll–Rand*, the state law claim was preempted by ERISA because the "employee was unlawfully discharged to prevent his attainment of benefits under a plan covered by ERISA." *Ingersoll–Rand*, 498 U.S. 133, 136, 111 S.Ct. 478, 479, 112 L.Ed.2d 474, 481. Here, it is alleged that the employee was discharged in retaliation for exercising his rights under the Workmen's Compensation Statute; the loss of ERISA benefits is the damages of the discharge, not the cause of it. *Ingersoll–Rand* is not applicable to the facts of this case.

Nevertheless, several courts have addressed the situation where ERISA is only implicated as a measure of damages. In *Pizlo v. Bethlehem Steel*, 884 F.2d 116 (4th Cir.1989), employees brought suit in state court based on state law claims. The action was removed and some of the state law claims were dismissed. On appeal, the Fourth Circuit reversed the dismissal of some claims and ordered them remanded to the state court.

The claims do not bring into question whether Plaintiffs are eligible for plan benefits, but whether they were wrongfully terminated from employment after an alleged oral contract of employment for a term. In their state law claims, the Plaintiffs seek from the corporation compensatory damages for wages and pension, health, life and disability benefits that they would have been entitled to had the alleged contract to work until age 62 not been breached. If the Plaintiffs prevail, the damages would be measured in part by the lost pension benefits the Plaintiffs would have received, but the pension trust itself would not be liable and the administrators of the pension plan would not be burdened in any way. *Pizlo* at 120–1. Here too, if the Plaintiff prevails, damages will be measured by the lost benefits the Plaintiff would have received. The plan is not a defendant and can not be liable or burdened by this litigation; rather it is the Defendants, the employer, who may be found liable for causing the loss of benefits by the wrongful discharge.

In *Tippett v. Old Kent Bank*, 134 F.R.D. 159 (W.D.Mich.1991), an employee brought suit in state court based on state law claims. The action was removed and the employee sought remand. The court stated that the claim was not one to enforce pension benefits. "Plaintiff is merely claiming that loss of pension benefits is one aspect of the damages caused by her discharge." *Tippett* at 160. The court went on to explain:

A claim for wrongful discharge which seeks damages including loss of pension benefits, does not "relate to" a covered plan as contemplated by 29 U.S.C. § 1144(a). Nowhere in the complaint does plaintiff suggest that the true purpose of her discharge was to deprive her of pension rights. No ERISA cause of action lies when the loss of pension benefits was a mere consequence of, but not a motivating factor behind, the termination of employment.

Defendants' reliance on *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), is misplaced. In *Ingersoll–Rand* the Court held that ERISA preempts a state common law claim that an employee was unlawfully discharged to prevent his attainment of benefits under a plan covered by ERISA. The case is inapplicable to the case before this Court because plaintiff's complaint does not allege that she was terminated to prevent her form receiving pension benefits.

*Tippett*, 134 F.R.D. at 160–1 (citations omitted). Here too, the Plaintiff claims consequential loss of benefits, not an intentional motivation to deny those benefits.[1] Similarly then, no relief would be available if ERISA preemption applied. Unless the purposes of the statute require preemption, it would be an unjust result to deny the Plaintiff her state law claim.

In *Klank v. Sears, Roebuck and Co.*, 735 F.Supp. 260 (N.D.Ill.1990), an employee brought suit in state court and the defendant removed the action. The Plaintiff moved for remand which was granted. The court stated:

What Sears' thoughtful presentation has missed, however, is the fact that Klank is *not* suing as a beneficiary or participant under an employee benefit plan—he does *not* come "within the scope" of ERISA § 1132(a)(1)(B). Instead he complains that he was misled by Sears' nondisclosure of a future (though nonexistent) employee benefit plan. To be sure, Klank's measure of *damages* if his lawsuit were to succeed will be ascertained by reference to that later-announced plan, but that does not at all equate with bringing him within the scope of the statutory section. Suit as a *non* beneficiary or *non* participant does not translate by some sleight of hand into suit as a beneficiary or participant.

*Klank* at 262. So too, the Plaintiff is claiming Tony Howard was not a participant and she was not a beneficiary because of the wrongful discharge. The plan will be the measure of damages, but that does not create ERISA preemption. In discussing *Pizlo* the court said,

Klank's case is not a perfect match to that in *Pizlo*. But the operative concept in the two cases is identical: the distinction between (1) claiming as an actual beneficiary or participant under an employee benefit plan and (2) claiming as a *non* beneficiary or *non* participant whose damages might be measured by the plan's formula.

*Klank*, 735 F.Supp. at 264. The same might be said here. Though the Plaintiff's case may not be a perfect match for either *Pizlo, Tippett*, or *Klank*, the operative concepts are the same.

In *Pohl v. National Benefits Consultants*, 956 F.2d 126 (7th Cir.1992), suit was brought against a plan in state court and subsequently removed alleging negligent misrepresentation after the Pohls were told over the phone that certain health care benefits would be covered under the plan which in fact were not covered. The Seventh Circuit emphasized, "[n]ot the semantics of the word 'relate,' but the policy of the statute, requires preemption and the denial of a remedy." *Pohl*, at 128. The Seventh Circuit explained, "[o]ne of ERISA's purposes is to protect the financial integrity of pension and welfare plans by confining benefits to the terms of the plans as written, thus ruling out oral modifications." *Pohl* at 128. This purpose is not implicated here. As previously noted, the plan is not a party to this litigation and is not burdened by nor potentially obligated by it. The integrity of the plan is thus preserved.

The purposes of the act were established by Congress.[2] The purposes of ERISA do

---

**1.** Though here, unlike *Pizlo* and *Tippett*, the sole aspect of damages caused by the wrongful discharge are the benefits from the ERISA plan, the logic is the same. The plaintiff's claim is based solely on state law; the lost benefits do not relate to liability, only to damages.

**2.** It is hereby declared to be the policy of this chapter to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing stan-

not preclude using potential benefits as a measure of damages in another action, nor would they be furthered if preemption abolished state law claims which relied on such benefits as a measure of damages. Permitting Plaintiff's wrongful discharge claim to proceed does not impede the effectuation of the policy objectives established by Congress in ERISA.

Defendants argue that "there obviously is a 'nexus between' the wrongful discharge claim and the OAD & D Plan," and that "if the Plan did not exit, plaintiff would have no claim whatsoever." Reply Brief at 4. Defendants have extracted the nexus language from *Ingersoll–Rand* which has been previously distinguished. While it is perhaps unusual to find a wrongful discharge claim with damages limited to the benefits of an employee benefit plan, this does not defeat the Plaintiff's claim. Certainly there would have been other damages had Tony Howard not died while still disabled. Nevertheless, his premature death does not alter Defendants' liability for wrongful discharge, it only alters the damages recoverable if liability is established.

Defendants also argue that "the *Frampton* [v. Central Ind. Gas (1973), 260 Ind. 249, 297 N.E.2d 425] claim lies under Indiana law to remedy employer actions that penalize employees for filing workmen's compensations claims ..." Reply Brief at 5 (emphasis, citations, and internal quotation marks omitted). The consequential loss of a $50,000.00 life insurance policy is an adequate penalty to fulfill the *Frampton* penalty requirements. Defendants related argument that this makes the plan a necessary factor in establishing liability and is therefore preempted is equally unavailing. Though *Frampton* may require damages as a condition of liability, this does not make the nature of the damages a liability issue, merely the existence of damages is a liability issue.

Defendants further argue that "plaintiff's wrongful discharge claim makes no sense unless defendants intended to deprive Tony [Howard] of ERISA benefits" and that "the only 'retaliation' that discharge inflicted on Tony [Howard] was to deprive him of ERISA benefits." This argument assumes the Defendants had the omniscience to know that Tony Howard would subsequently die before recovering. This assumes too much. Defendants could not have known at the time of the dis-

---

dards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal Courts.
29 U.S.C. § 1001(b).
    It is hereby further declared to be the policy of this chapter to protect interstate commerce, the Federal taxing power, and the interests of participants in private pension plans and their beneficiaries by improving the equitable character and the soundness of such plans by requiring them to vest the accrued benefits of employees with significant periods of service, to meet minimum standards of funding, and by requiring plan termination insurance.
29 U.S.C. § 1001(c).
    It is hereby declared to be the policy of this Act—
    (1) to foster and facilitate interstate commerce,
    (2) to alleviate certain problems which tend to discourage the maintenance and growth of multiemployer pension plans,
    (3) to provide reasonable protection for the interests of participants and beneficiaries of financially distressed multiemployer pension plans, and

    (4) to provide a financially self-sufficient program for the guarantee of employee benefits under multiemployer plans.
29 U.S.C. § 1001a(c).
    It is hereby declared to be the policy of this title—
    (1) to foster and facilitate interstate commerce;
    (2) to encourage the maintenance and growth of single-employer defined benefit pension plans;
    (3) to increase the likelihood that participants and beneficiaries under single-employer defined benefit pension plans will receive their full benefits;
    (4) to provide for the transfer of unfunded pension liabilities onto the single-employer pension plan termination insurance system only in cases of severe hardship;
    (5) to maintain the premium costs of such system at a reasonable level; and
    (6) to assure the prudent financing of current funding deficiencies and future obligations of the single-employer pension plan termination insurance system by increasing termination insurance premiums.
29 U.S.C. § 1001b(c).

charge, that damages would be limited to the deprivation of ERISA benefits.

Defendants finally argue that "[f]or plaintiff to prevail on the wrongful discharge claim, the Court would have to examine, interpret and apply the terms of the OAD & D plan." Reply Brief at 8. Defendants are incorrect to the extent that they assert liability cannot be determined without examining the plan; Defendants are correct to the extent that they assert damages cannot be determined without examining the plan. This was true in *Pizlo* and *Tippett* also. Though it may not be clear that Plaintiff would have been entitled to benefits under the plan even if Tony Howard had remained an employee and even though that issue may be litigated in this action, the litigation of that damages issue does not alter the nature of the liability claim. If the victim of an automobile accident were to leave his employment as a result of his injuries and consequently lose benefits under an employee benefit plan, the loss of those benefits could be part of the measure of damages in her tort claim. Nevertheless, such a claim would not invoke ERISA or preemption issues, and if it did the victim would be without a remedy because ERISA does not address the consequential loss of benefits. Clearly such a result would do little to further the purposes of ERISA. The same is no less true here. The complaint alleges the wrongful discharge resulted in a loss; the allegation that the loss was the benefit of an employee benefit plan does not invoke ERISA or preemption. The case would be different if the wrongful discharge action was based on an intent to deprive the plaintiff of ERISA benefits, but that is not the case here.

Defendants have presented cases from other circuits which make it clear that there is conflicting authority on this point both within and between the circuits,[3] but Defendants have not presented this Court with any citations on point from the Seventh Circuit. Therefore this Court will follow the rationale of *Pohl* that, "[n]ot the semantics of the word 'relate,' but the policy of the statute, requires preemption and the denial of a remedy." *Pohl* at 128. As stated in *Memorial Hosp. v. Northbrook Life Ins.*, 904 F.2d 236, 247 (5th Cir.1990), this Court is "unpersuaded that preemption in this case would further the congressional goal of protecting the interests of employees and their beneficiaries in employee benefit plans."

## B

■ Having determined that Count I is not preempted by ERISA, it is necessary to return to a discussion of jurisdiction. "The general rule is that when the federal claims are dismissed before trial, the district court should relinquish jurisdiction over any pendant state-law claim rather than resolve it on the merits." *Martin–Trigona v. Champion Fed. Sav. and Loan*, 892 F.2d 575, 578 (7th Cir.1989). Though the Defendants assert reasons why summary judgment should be granted on Count I, the Court is not convinced that "it is absolutely clear that the pendant claim can be decided in only one way." *Martin–Trigona*, at 578. Since Count I concerns a complex and developing state law issue, it would be best if the matter was adjudicated in a state court.

The Plaintiff has requested remand if this Court determines that no federal issues remain. "[T]he district court ... in its discretion, may remand all matters in which state law predominates." 28 U.S.C. § 1441(c). "Because this case was removed here from the state court, we can remand it to that court ..." *Fabrico Mfg. Corp. v. Wilson Sporting Goods*, 660 F.Supp. 601 (N.D.Ill.1987); *See Pizlo v. Bethlehem Steel*, 884 F.2d 116, 121 (4th Cir.1989) ("[R]everse[d] ... with directions to remand those claims to the Circuit Court for Baltimore County."); *Contra La Buhn v. Bulkmatic Transport*, 644 F.Supp. 942, fn. 7 (N.D.Ill.1986) *aff'd*, 865 F.2d 119, 124 (7th Cir.1988) ("Since Judge Shadur did not

---

**3.** *See e.g. Christopher v. Mobil Oil*, 950 F.2d 1209 (5th Cir.1992), (Points out inconsistent holdings of Fifth Circuit in *Memorial Hosp. v. Northbrook Life Ins.*, 904 F.2d 236, 247 (5th Cir.1990) and

*Cefalu v. B.F. Goodrich*, 871 F.2d 1290 (5th Cir. 1989)); *Pizlo v. Bethlehem Steel*, 884 F.2d 116 (4th Cir.1989).

abuse his discretion in dismissing the suit without prejudice, we need not consider whether he ought to have remanded the case instead. There would be no practical difference, since the statute of limitations is not a problem in this case."). Having determined that no federal issues remain and that the only remaining count would best be tried in a state court, this case is remanded to the Spencer Circuit Court.

MOTION TO STRIKE

Having not relied on Plaintiff's Affidavit in Response to Motion for Summary Judgment, having not reached the merits of Count I, and having remanded this case back to the Spencer Circuit Court, this Court declines to address the Motion to Strike. It is left to the parties and the Spencer Circuit Court to determine if or how the Motion to Strike should be addressed.

CONCLUSION

The Defendants' Motion for Summary Judgment is Granted as to Counts II, III, and IV. This case along with the Motion to Strike is Remanded to the Spencer Circuit Court for further proceedings this 24th day of April 1992 in Evansville, Indiana.