Richard L. WATKINS et al., Plaintiffs,

v.

SHARED HOSPITAL SERVICES
CORPORATION, Defendant.

No. 3:93–0150.

United States District Court,
M.D. Tennessee,
Nashville Division.

May 20, 1994.

Morris Reid Estes, Jr., Trevor Wayne
Howell, Stewart, Estes & Donnell, Nashville,
TN, for plaintiffs.

Matthew C. Lonergan, John M. Scannapieco, Boult, Cummings, Conners & Berry, Nashville, TN, for defendant.

## MEMORANDUM

WISEMAN, District Judge.

Presently before the court is the defendant's motion for summary judgment. The defendant asserts that the plaintiff has failed to make out a *prima facie* case of discrimination on the basis of handicap or of interference with protected health benefits. Alternatively, the defendant asserts that ERISA preempts the state law claim for discrimination. For the reasons discussed below, the defendant's motion will be denied in all respects.

### I

The plaintiff, Richard Watkins,[1] was employed as a laundry truck operator by the defendant, Shared Hospital Services Corporation ("SHSC"), from May 24, 1988 until his termination on May 14, 1992. SHSC cited insubordination and the filing of false time cards as grounds for dismissal. The plaintiff argues that these reasons are mere pretext for the true, illegal purposes behind his discharge.

Approximately nine months before his termination, the plaintiff underwent heart surgery to alleviate severe cardiovascular blockage. As a result of this surgery, Mr. Watkins was absent work from September, 1991 until January 1, 1992. During this time he received three weeks of accrued paid sick leave and thereafter received his average weekly salary. In January, Mr. Watkins was released by his doctor to return to work on the condition that he not engage in strenuous activities. Mr. Watkins did return to work in a reduced capacity and was aided by a helper provided by the defendant. There is no dispute that, for at least the first three months after his return, Mr. Watkins performed only light duty tasks in keeping with his doctor's orders.

Just prior to his dismissal, Mr. Watkins' immediate supervisor, Mr. Tony Heatherly, accused him of "stealing time" by counting time spent driving his laundry truck from his home to his first pickup of the day. Mr. Watkins contends that his time-keeping practice accorded with company policy and that never before had he been reprimanded for incorrect time-keeping. According to the plaintiff, he was receptive to Mr. Heatherly's complaint and agreed to alter his time-keeping practice, but Mr. Heatherly nevertheless informed him, without further discussion, that he was fired. The plaintiff was given a separation notice listing insubordination and misstatement of time as the grounds for dismissal.

Mr. Watkins argues that in fact SHSC fired him to avoid paying further medical costs associated with his heart condition[2] and because his supervisors perceived him as handicapped and thus of reduced usefulness. In support of this argument, Mr. Watkins presents several pieces of direct and indirect evidence suggesting that the management of SHSC saw Mr. Watkins as handicapped and as a potential financial burden.

Believing he was impermissibly terminated, the plaintiff filed a complaint in the Chancery Court of Davidson County, Tennessee alleging violations of the Tennessee Human Rights Act ("THRA") and the federal Employee Retirement Security Act ("ERISA"). Plaintiff seeks reinstatement, back pay, front pay, lost employee benefits, damages for humiliation and embarrassment, prejudgment interest, and attorney fees and costs. The defendant filed a notice of removal to this court on the authority of the federal jurisdiction provision of ERISA, 29 U.S.C. § 1132(e).

### II

The standards governing the decision on a motion for summary judgment are well-es-

---

1. In addition to Mr. Watkins, plaintiffs include Mr. Watkins' family. However, the only actions relevant here involve Mr. Watkins and the defendant, Shared Hospital Services Corporation. For simplicity, Mr. Watkins will be treated as the sole plaintiff.

2. The plaintiff received company-paid health insurance supplemented by an employee-paid option.

tablished. Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1476–80 (6th Cir.1989). The party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. Upon meeting this burden, the burden shifts to the nonmoving party, who cannot rest on its pleadings but must present some "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553. A dispute about a material fact is "genuine" within the meaning of Federal Rule of Civil Procedure 56 only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Id.* at 252, 106 S.Ct. at 2512. The court is to construe the evidence and all inferences to be drawn from it in the light most favorable to the nonmoving party. *Id.* at 255, 106 S.Ct. at 2513.

### A. *Prima Facie Cases of Discrimination and Interference With Protected Rights*

■ A defendant may prevail on summary judgment by showing that the plaintiff cannot satisfy all elements of his or her claim, by showing that the plaintiff cannot rebut an affirmative defense, or by prevailing on a pure question of law. The defendant first argues that the plaintiff has failed to provide proof sufficient to make out *prima facie* cases of THRA and ERISA violations. To address this contention, it is necessary to articulate the elements of each claim.

#### 1. *Interference With an ERISA Plan*

■ A violation of the anti-interference provision of ERISA, 29 U.S.C. § 1140, in-

volves three elements: (1) participation by the plaintiff in a protected plan; (2) prohibited action by the defendant (3) for the purpose of interfering with the plaintiff's receipt of benefits under the plan or in retaliation for the plaintiff's exercising his or her rights under the plan. *See Humphreys v. Bellaire Corp.,* 966 F.2d 1037, 1043 (6th Cir.1992). With regard to the third element, although there must be shown some specific intent to violate ERISA, interference with ERISA benefits need be only one of several motivating factors rather than the sole motivation. *See id.*

■ The plaintiff has met his burden on the ERISA claim. First, it is undisputed that plaintiff participated in a protected health benefits plan. *See* 29 U.S.C. § 1002(1). Second, there is also no dispute that discharge in order to interfere with ERISA benefits is prohibited conduct under ERISA. *See id.* § 1140. Third, the plaintiff has presented facts which, if true, would support the contention that SHSC fired him to avoid paying further benefits and to avoid higher insurance premiums.[3] Although the defendant does not agree with the plaintiff's interpretation of the evidence and labels plaintiff's evidence as conclusory allegations, plaintiff has presented more than conjecture and opinion testimony. The plaintiff has presented detailed affidavit and deposition testimony of facts based on personal observations that for summary judgment purposes must be believed.

Resolving all ambiguities in favor of the plaintiff, it is apparent that he has made out *prima facie* ERISA violation. Moreover, plaintiff's proof brings into question the legitimacy of the reasons proffered for dismissal. *See Humphreys,* 966 F.2d at 1043 (to avoid summary judgment, plaintiff must not only make out a *prima facie* case of ERISA violation but also must rebut any justifiable reasons proffered for defendant's action). The plaintiff's version of events casts a pall of doubt over the truthfulness of the reasons given for termination. If the company did, in all other cases, sanction the timekeeping

---

**3.** *See, e.g.,* Aff. of Susan Wellbeloved; Aff. of Debbie L. Watkins; Aff. of Richard Watkins;     Dep. of Kenneth Knopp at 17, 49.

practices for which Mr. Watkins was ostensibly fired, then the proffered reasons for dismissal are pretextual. *See id.* (proffered reason for action may be rebutted by showing it is "unworthy of credence").

### 2. *Discrimination on the Basis of a Handicap*

A *prima facie* case of handicap discrimination under THRA, Tenn.Code Ann. § 8–50–103, has two elements: (1) proof that the plaintiff is handicapped or is regarded as such by the defendant and (2) proof that the plaintiff is capable of performing the job from which he or she was fired notwithstanding the actual or perceived handicap. *See Cecil v. Gibson,* 820 S.W.2d 361, 365–66 (Tenn.Ct.App.1991); *see also* Tenn.Code Ann. § 4–21–102(9)(A) (defining handicap); *Abraham v. Cumberland–Swan, Inc.,* 1992 WL 207775, 1992 Tenn.App. LEXIS 739 (Tenn.Ct.App. Aug. 28, 1992). If the plaintiff makes out a *prima facie* case, the burden shifts to the employer to justify its action. *See Tuck v. HCA Health Servs.,* 7 F.3d 465, 469 (6th Cir.1993). If this justification is unbelievable on its face or is rebutted by the plaintiff, then the plaintiff's claim survives summary judgment and may go forward.

The plaintiff has presented evidence that his supervisors were not only aware of his heart condition but regarded it as a significant impediment to his job performance.[4] Such a view is sufficient for one to be regarded as handicapped for purposes of THRA. *See Cecil,* 820 S.W.2d at 365–66. Additionally, the plaintiff has presented evidence that, even in the defendant's view, he could perform his job duties in spite of his heart condition.[5] Finally, as noted above, the plaintiff's proof brings into question the validity of the reasons proffered for termination. Accordingly, the plaintiff has made out a *prima facie* case of handicap discrimination and has rebutted the grounds cited for dismissal by the defendant.

In sum, genuine disputes of material fact exist that preclude summary judgment on the merits of plaintiff's claims.[6] If the plaintiff's version of facts is ultimately accepted, he may well be entitled to damages on both of his claims.

### B. *ERISA Preemption of the State Law Claim*

The most problematic question presented by defendant's motion is whether ERISA preempts the state law claim for handicap discrimination. The test for determining ERISA preemption is not well-defined. On the one hand, any law that "relates to" an ERISA plan is preempted. *See* 29 U.S.C. § 1144(a). On the other hand, if a law has only a tenuous or peripheral effect on an ERISA plan, that law is not preempted. *See Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983). As is evidenced by the numerous cases in which courts reach differing conclusions on the preemption of similar state laws, whether a law has a tenuous or peripheral effect is a difficult judgment call about which reasonable minds can differ. *See, e.g.,* Teresia B. Jovanovic, *Pre–Emption of State Fair Employment Laws Under Provisions of § 514 of Employee Retirement Income Security Act (29 U.S.C. § 1144),* 72 A.L.R.Fed. 489 (1985 & Supp. 1993). In employment discrimination cases, however, there is a simple approach to preemption that protects both federal interests in regulation of employee benefit plans and state and individual interests in prohibition of discrimination.

The ERISA preemption clause, 29 U.S.C. § 1144, has become something of a juggernaut, crushing any state law that gets in its way. Congress largely anticipated and intended this effect. Indeed, Congress desired that federal law exclusively control the administration and regulation of employee benefit plans. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45–47, 107 S.Ct. 1549,

---

4. *See, e.g.,* Aff. of Susan Wellbeloved; Aff. of Debbie L. Watkins.

5. *See* Dep. of Tony Heatherly at 87–88.

6. The defendant argues that much of the plaintiff's evidence is not credible. Except for patently false statements, credibility determinations are of course inappropriate at this stage and must be reserved for trial.

1552–53, 95 L.Ed.2d 39 (1987). Congress' key concern appears to have been with state regulation of employee benefit plans, whether intentional or not. *See Ingersoll–Rand v. McClendon,* 498 U.S. 133, 138–39, 111 S.Ct. 478, 482–83, 112 L.Ed.2d 474 (1990). The fact that a state law cause of action may have some minimal effect on the payment of ERISA benefits, however, without having any effect on the mechanics of an ERISA plan, is not necessarily sufficient to deem the law preempted. *See id.* at 139, 111 S.Ct. at 483. Only laws specifically designed to affect employee benefit plans, laws of generally applicable nature that have the effect of regulating employee benefit plans, and specific causes of action in which denial of benefits is a central factor are preempted. *See id.* at 139–40, 111 S.Ct. at 483–84; *see also Mackey v. Lanier Collection Agency & Serv., Inc.,* 486 U.S. 825, 841, 108 S.Ct. 2182, 2191, 100 L.Ed.2d 836 (1988); *Fort Halifax Packing Co., Inc. v. Coyne,* 482 U.S. 1, 12, 107 S.Ct. 2211, 2218, 96 L.Ed.2d 1 (1987); *Moore v. Philip Morris Cos.,* 8 F.3d 335, 341 (6th Cir.1993) (resolution of state law claim would require determination of ERISA plan eligibility, and so claim was preempted); *Cromwell v. Equicor–Equitable HCA Corp.,* 944 F.2d 1272, 1276 (6th Cir.1991) ("heart of issues" in plaintiff's preempted claims was the administration of ERISA plan).

The expansiveness of ERISA's preemption clause presents courts with a dilemma in wrongful discharge cases where ERISA benefits are a possible element of damages. If state law employment discrimination claims are deemed preempted because any recovery may involve payment of ERISA benefits, then plaintiffs may be left to seek relief only under section § 540 of ERISA, 29 U.S.C. § 1140. An element of a § 540 claim is that the employer have a specific intent to interfere with receipt of ERISA benefits. *See Humphreys v. Bellaire Corp.,* 966 F.2d 1037, 1043 (6th Cir.1992). Yet age, race, sex, or handicap may have been the sole motivation behind the discharge; denial of ERISA bene-

fits may have played no part. In such a case, where the employee has chosen to proceed on state law (or where only state law provides protection), the employer may get away with discrimination by combining the strict requirements of § 540 with the loose requirements of the preemption clause.[7]

█ The Supreme Court has recognized that employment discrimination may take many forms and that ERISA may not be sufficient to redress all of these forms. *See Hazen Paper Co. v. Biggins,* —— U.S. ——, ——, 113 S.Ct. 1701, 1707, 123 L.Ed.2d 338, 348 (1993) ("Nor do we rule out the possibility of dual liability under ERISA and the ADEA where the decision to fire the employee was motivated both by the employee's age and by his pension status."). To the extent state human rights laws seek to regulate employer-employee relations by imposing requirements on ERISA plans, they are preempted; *Shaw,* 463 U.S. at 97, 103 S.Ct. at 2900. To the extent these laws seek directly to prohibit employment discrimination on the basis of age, sex, race, or disability, and only incidentally affect ERISA plans, they are not preempted. *Id.* at 97 n. 17, 103 S.Ct. at 2900 n. 17.

█ Taking all of the above into consideration, the court holds that, where a plaintiff states a claim for damages based on a state anti-discrimination law and the only relation of this claim to an ERISA plan is that benefits from such a plan are possibly recoverable as part of damages, the underlying state law does not "relate to" the ERISA plan for purposes of preemption. *Cf. Lane v. Goren,* 743 F.2d 1337, 1340 (9th Cir.1984) (California anti-discrimination law not preempted, even if it increased the operational costs of ERISA plans); *Hubbard v. Southwestern Bell. Tel. Co.,* 759 F.Supp. 567, 569 (W.D.Mo.1991) (possible recovery of benefits through discriminatory discharge action incidental to any ERISA plan); *Tippett v. Old Kent Bank,* 134 F.R.D. 159, 160–61 (W.D.Mich.1991) (possible recovery of bene-

---

7. The Sixth Circuit, relying on *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (case under the Labor Management Relations Act), has stated that loss of a remedy is irrelevant to ERISA preemption analy-

sis. *Cromwell,* 944 F.2d at 1272. This is not the same as saying, however, that a court should ignore the purpose of a statute and its intended remedial scope when deciding the preemption question.

fits insufficient grounds on which to preempt Michigan wrongful discharge law). Allowance of such a claim depends on the existence of some proof that denial of ERISA benefits was not the sole purpose behind a discriminatory action. If, at summary judgment or at the close of proof at trial, the evidence indicates no improper motive other than interference with plan benefits, then the state law anti-discrimination claim should not go to the jury.[8] In such a case, an action under the non-interference provision of ERISA, 29 U.S.C. § 1140, is the only sustainable action. Plaintiffs may not evade ERISA preemption simply by asserting mixed, improper motives on the part of the defendant.[9] Such an approach protects the federal interest in exclusive regulation of ERISA plans as well as the states' and plaintiffs' interest in redressing employment discrimination.

 The plaintiff's handicap discrimination claim, if successful, will require only the payment of benefits due under an ERISA plan as part of damages; the general operation of the plan will not be affected. Moreover, plaintiff has consistently asserted handicap discrimination, and not merely denial of benefits, as one of the reasons for his dismissal. And plaintiff has presented independent proof to support both theories of the case. Accordingly, plaintiff's state law claim is an independent cause of action not related to his ERISA claim for purposes of preemption.

### III

For the reasons stated above, the defendant's motion for summary judgment will be denied in an accompanying Order.

8. In cases where both state law and ERISA claims make it to trial, it may be appropriate to allow a jury to decide the state law claim while the judge decides the ERISA claim—to which no right to jury attaches. *See Daniel v. Eaton Corp.,* 839 F.2d 263, 268 (6th Cir.), *cert. denied,* 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988).

9. This holding is subject to one additional caveat not at issue here. If, as in *Van Camp v. AT & T Info. Sys.,* 963 F.2d 119 (6th Cir.1992), resolution of a state law claim would require a determination of ERISA plan eligibility, then the state law is preempted in that particular case even if resolution of that claim would not typically require

### ORDER

For the reasons stated in the accompanying Memorandum, the defendant's motion for summary judgment is hereby DENIED in all respects. Additionally, the defendant's motion to strike the jury demand with respect to the ERISA claim is hereby GRANTED. The court will decide the ERISA claim but will submit the handicap discrimination claim to the jury if the proof at trial so warrants.

It is SO ORDERED.

such an eligibility determination. Hence, it is impossible to rule that in all cases involving handicap discrimination under THRA, ERISA preemption does not apply. Rather, the particular facts of a case must be analyzed to determine whether consideration of the state law claim would, in effect, require administration of the ERISA plan by the court. Such a result might leave a wrong unaddressed, but it is required given Congress' concern that federal law alone control ERISA plan administration. *See Cromwell,* 944 F.2d at 1276 (loss of a remedy is no bar to preemption).